UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| **RENE VALLECILLO** | **CASE NO. 6:19-CV-00508** |
| **VERSUS** | **JUDGE ROBERT R. SUMMERHAYS** |
| **MCDERMOTT, INC., ET AL.** | **MAG. JUDGE PATRICK J. HANNA** |

## RULING

Before the Court is a Motion to Exclude the Expert Opinion of Plaintiff's Root Cause Analysis Expert, Robert Borison, filed on behalf of Defendant, McDermott, Inc.[1] Pursuant to the motion, Defendant moves the Court "to preclude Plaintiff, Rene Vallecillo, from presenting the opinions of his root cause analysis expert, Robert E. Borison, in the form of a report or testimony, at the trial of this matter."[2] Plaintiff opposes the motion.[3] For the reasons that follow, the motion is GRANTED IN PART and DENIED IN PART.

### I.
### BACKGROUND

Plaintiff brings this suit for injuries he sustained on April 20, 2016, while working for Defendant as a Leaderman aboard the DB50 derrick barge. On that day, the crew of the DB50 was in the process of retrieving and derigging large buoys in the Gulf of Mexico, approximately 220 miles from Port Fourchon, Louisiana. Prior to the accident, the crew had retrieved a buoy from the subsea and moved it onto the deck of the DB50. The buoy was rigged to the vessel's heavy-lift crane by the recovery lifting sling.[4] Plaintiff and other crew members were instructed to de-rig the

---

[1] ECF No. 24.
[2] ECF No. 24-1 at 1.
[3] ECF No. 26.
[4] ECF No. 1 at 4, ¶ 10.

recovery lifting sling and then "rig new slings necessary to relocate said ocean buoy to a material barge."[5] In order to accomplish the task, Plaintiff and two other crew members were transferred via the deck crane to the top of the buoy.[6] Once in position atop the buoy, the crew attached their fall protection lanyards to the buoy and proceeded to de-rig the retrieval slings. The de-rigging process required the crew to unscrew the shackle pin nuts from the pins, remove the pins, pull the shackle off (thereby allowing the slings to move away from their attachment pad-eyes), and then replace the pins and nuts.[7] The crew successfully detached two legs of the sling, however the third sling leg was stuck in place on the pad-eye.[8] The crew attempted to dislodge the shackle with a hammer and pry bars but was unable to remove it.[9] Plaintiff signaled the crane operator to lift the sling line in order to free the shackle from the pad eye.[10] The crane operator then lifted the sling line, and as the shackle released from the pad eye the sling spun (allegedly due to torque in the line) and became entangled with Plaintiff's safety lanyard, "violently jerking [Plaintiff] down on top of the buoy."[11] Defendant now moves to exclude the expert testimony of Plaintiff's safety expert, Robert Borison, arguing Borison's expert report does not accurately reflect the testimony of the witnesses or Plaintiff, that it contains "several falsities, misrepresentations and omissions of essential factual detail," and that it contains impermissible legal conclusions.[12]

---

[5] *Id.* at ¶ 9.
[6] *Id.* at ¶ 11.
[7] ECF No. 24-1 at 2; ECF No. 24-3 at 4-5; ECF No. 24-4 at 9.
[8] ECF No. 26 at 2.
[9] *Id.*
[10] *Id.* at 3.
[11] *Id.*
[12] ECF No. 24-1 at 1.

## II.
### STANDARD OF REVIEW

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert testimony and reports. A witness may be qualified as an expert through knowledge, skill, experience, training, or education.[13] A qualified expert may testify "in the form of an opinion or otherwise," provided that: (1) the expert's testimony will help the trier of fact understand the evidence or determine a fact at issue; (2) the testimony is based on sufficient facts or data; (3) the testimony is the product of reliable principles and methods; and (4) the expert has reliably applied the principles and methods to the facts of the case.[14] Rule 702 imposes an obligation on the trial court to ensure that expert testimony—whether scientific or not—is not only relevant, but reliable.[15] An expert's opinion may be based on facts or data in the case of which the expert has been made aware, or facts or data which he or she has personally observed.[16] An expert may not render legal conclusions or provide opinions on legal issues.[17]

Expert testimony is relevant if it is shown that the expert's "reasoning or methodology can be properly applied to the facts in issue."[18] To be reliable, expert testimony must be "grounded in the methods and procedures of science and . . . be more than unsupported speculation or subjective belief."[19] The proponent of expert testimony has the burden to show by a preponderance of the evidence it is reliable, not that it is correct.[20] "The reliability analysis applies to all aspects of an

---

[13] FED. R. EVID. 702.
[14] *Id.*
[15] *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999).
[16] FED. R. EVID. 703.
[17] *Renfroe v. Parker*, 974 F.3d 594, 598 (5th Cir. 2020) (citing *Goodman v. Harris Cnty.*, 571 F.3d 388, 399 (5th Cir. 2009)).
[18] *Johnson v. Arkema, Inc.*, 685 F.3d 452, 459 (5th Cir. 2012) (quoting *Curtis v. M & S Petroleum, Inc.* 174 F.3d 661, 668 (5th Cir.1999)).
[19] *Id.* (quoting *Curtis*, *supra*).
[20] *Id.* (citing *Moore v. Ashland Chem., Inc.*, 151 F.3d 269, 276 (5th Cir.1998)).

expert's testimony: the methodology, the facts underlying the expert's opinion, the link between the facts and the conclusion, et alia."[21] The questions of relevance and reliability are the Court's overarching concern.[22] The analysis should be performed with an eye toward whether the expert opinion will assist the trier of fact, which requires that a proffered expert be able to "bring to the jury more than the lawyers can offer in argument."[23] Whether an expert's opinion would be helpful to the trier of fact is a low bar to meet and turns largely on whether the testimony is relevant; questions related to the bases and sources of an expert's opinion go to the weight to be assigned to it, rather than its admissibility.[24] The Court's role is not to displace the adversary system, but to ensure that the disputed evidence is "sufficiently reliable and relevant to the issue so that it is appropriate for the jury's consideration."[25] Exclusion of expert testimony is the exception rather than the rule, as "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."[26]

### III.
### ANALYSIS

**A.     Opinion No. 1**

Borison's first opinion is that Robert Bardwell, the crane operator on the DB50 at the time of Plaintiff's accident, "failed to follow well-accepted safety standards by lifting on a fixed object while allowing workers to be present in the line of fire."[27] Within Opinion No. 1, Borison describes

---

[21] *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 355 (5th Cir. 2007) (quoting *Heller v. Shaw Indus., Inc.*, 167 F.3d 146, 155 (3d Cir. 1999)).
[22] *Puga v. RCX Sols., Inc.*, 922 F.3d 285, 293–94 (5th Cir. 2019).
[23] *Id.* (internal citations omitted).
[24] *Id.* (citations omitted).
[25] *Id.* at 294.
[26] *Id.* (citing *Daubert*, 509 U.S. at 596).
[27] ECF No. 24-2 at 6.

Bardwell as the "supervisor responsible for the safety of this lift" and as the "supervisor of this crew during crane operations."[28] According to Borison, Bardwell could see that the shackle was in a rotational bind and therefore should have required the rigging crew to be removed from the top of the buoy before lifting on the shackle.[29]

Defendant contends Opinion No. 1 is inadmissible because Borison incorrectly asserts Bardwell was "the supervisor in charge of the assignment to lift and derig the buoys," and then, relying upon this misstatement of fact, opines that "*Bardwell* would have been responsible for the safety and operation of the procedure, and therefore, would have been responsible for the alleged injury sustained by Plaintiff."[30] According to Defendant, this is a "complete mischaracterization" of the underlying facts, because Plaintiff, Bardwell and Philip Gaudet (the deck foreman and Plaintiff's supervisor) all testified that Plaintiff "was in charge of the derigging operations, not Bardwell."[31] In light of this purported mischaracterization, Defendant contends the entirety of Opinion No. 1 is inadmissible.[32] Plaintiff responds that it is undisputed that Plaintiff "was in charge of the derigging of the buoy," but Bardwell "was in charge of the <u>crane operations</u> regarding the derigging process."[33]

Borison's opinion that Bardwell was the "supervisor responsible for the safety of this lift" and the "supervisor of this crew during crane operations" is based upon the American Petroleum Institute Recommended Practice 2D, 7th Edition, *Operation and Maintenance of Offshore Cranes*, § 4.1.5.1, which states in pertinent part, "The qualified crane operator . . . is responsible for those operations under his or her direct control. Whenever there is any doubt as to safety, the crane

---

[28] *Id.* at 6, 7.
[29] *Id.* at 7.
[30] ECF No. 24-1 at 6 (emphasis in original).
[31] *Id.* at 6-7 (emphasis omitted).
[32] *Id.* at 7.
[33] ECF No. 26 at 6-7 (emphasis in original).

operator should have the authority to stop and refuse to handle loads or continue operations as safety dictates."[34] Generally, questions relating to the bases and sources of an expert's opinion go to the weight assigned to the opinion, rather than its admissibility, and should be left for the jury's consideration.[35] "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."[36] The Court finds that Borison's reliance on facts inconsistent with those proffered by Defendant is a matter for cross-examination, as this goes to the weight to be assigned to Borison's opinion rather than its admissibility.

**B.      Opinion No. 2**

Borison's second opinion reads in pertinent part as follows:

It is my opinion . . . that Mr. Phillip Gaudet, barge foreman, and Mr. Robert Bardwell, the crane operator, should have filled out a Job Safety Analysis form and held a JSA meeting with the crew derigging the buoys. Although rigging and de-rigging equipment, supplies, etc. is a common everyday activity for the workers on this barge, performing that activity while atop one of these buoys, where fall protection is required, moves that activity into a job that requires a JSA.

Because Mr. Phillip Gaudet and Mr. Robert Bardwell were well aware that a rotational bind could be placed on the shackle, and [sic] that information should have been included on the JSA form and discussed during the meeting. Mr. Rene Vallecillo testified that he had no experience with the sling exerting a rotational force on the shackle to such an extent that the shackle could not be loosened from the pad eye.

If Mr. Rene Vallecillo appreciated the dangerous position he was in when the shackle was being lifted, as did Mr. Robert Bardwell, Mr. Rene Vallecillo should have used his stop work authority. As Mr. Robert Bardwell testified that this was a common occurrence, it is unclear at this time if Mr. Rene Vallecillo's stop-work request would have been heeded.[37]

---

[34] ECF No. 24-2 at 7.
[35] *Puga*, 922 F.3d at 294; *Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 562 (5th Cir. 2004).
[36] *Daubert*, 509 U.S. at 596.
[37] ECF No. 24-2 at 8.

Defendant asserts Opinion No. 2 is unreliable and should therefore be excluded. In support, Defendant argues that although no written JSA form exists, the testimony indicates that a JSA meeting (or some other safety meeting) was likely held because "this was standard practice."[38] Because (as Defendant argues) a safety meeting "likely" occurred, Defendant concludes that "claiming Plaintiff would have been unable to identify the alleged issue giving rise to the subject incident . . . is entirely speculative. . . ."[39] Defendant further notes that Borison fails to account for Plaintiff's extensive experience performing "this derigging job many times prior to the accident at issue and never had any problems or issues."[40] Finally, Defendant notes that Borison "needlessly questions" whether Plaintiff's stop-work request would have been heeded.[41] Plaintiff responds that Bardwell was aware that a rotational bind could be placed on the shackle, resulting in the sling and shackle spinning uncontrollably, whereas Plaintiff was not.[42] According to Plaintiff, had the potential danger been addressed in a JSA form and meeting, the accident could have been avoided.[43] Plaintiff further asserts that because he was inadequately informed about the potential dangers, he did not realize he was in a dangerous situation and should have used his stop-work authority.[44] The Court finds Borison's statement that due to the circumstances, it is "unclear . . . if . . . [Plaintiff's] stop-work request would have been heeded" is too speculative to assist the trier of fact, and therefore Plaintiff's counsel should not elicit such testimony from Borison at trial. As to

---

[38] ECF No. 24-1 at 7.
[39] *Id.*
[40] ECF No. 24-1 at 7 (citing ECF No. 24-4 at 4-5). The Court agrees with Defendant that Plaintiff testified he had de-rigged similar buoys many times over the years. *Id.* However, Defendant ignores Plaintiff's testimony that this was the first occasion where he had a shackle stick while performing this work. ECF No. 26-3 at 13.
[41] ECF No. 24-1 at 8.
[42] ECF No. 26 at 7-8.
[43] *Id.* at 8.
[44] *Id.*

the remainder of Defendant's objections to Opinion No. 2, the Court again finds these are matters for cross-examination, not exclusion.

### C. Opinion No. 3

Borison's final opinion is that once the crew was unable to remove the shackle from the pad eye using "conventional means," Bardwell should have used his stop-work authority to halt the lift.[45] Borison continues, "Bardwell, as the supervisor of this work, should have refused to lift this shackle until all crew members were removed from atop the buoy," because "lifting an object that is not free to be lifted is dangerous, but allowing crewmembers to remain in the line of fire during this unsafe lift is not acceptable."[46] Defendant argues this opinion should be excluded for the same reasons as Opinion No. 1—*i.e.* that this opinion is based on the falsehood that Bardwell, rather than Plaintiff, was the supervisor of this operation. Defendant additionally argues that Plaintiff "was in the best position to stop work if there was an issue." Again, the Court finds this is a matter for cross-examination. At trial, Defendant can attempt to prove that Borison's assumptions are inaccurate and should therefore be given little weight.

### D. Legal Conclusions

Lastly, Defendant contends Borison "repeatedly and impermissibly" draws legal conclusions regarding causation and "other legal elements."[47] With regard to Opinion No. 1, Defendant argues Borison's statement that "Bardwell, as the crane operator, was responsible for the safety of this lift and acknowledged that in his deposition" is a legal conclusion addressing "duty."[48] Defendant takes issue with Borison's statements that Bardwell "knew or should have known that releasing the shackle from the pad eye under stored rotational tension would result in

---

[45] ECF No. 24-2 at 9.
[46] *Id.*
[47] ECF No. 24-1 at 8.
[48] *Id.* at 9.

the sling and shackle spinning uncontrollably" and that Bardwell "knew or should have known that his rigging crew was in the line of fire before lifting the shackle."[49] Specifically, Defendant contends Borison's use of the phrase "knew or should have known" is objectionable, as it "alludes to specific legal language."[50] Finally, Defendant argues Borison's statement that Bardwell "allowed his fellow workers to remain in the line of fire" is impermissible as it "speaks to the legal element of breach of an established duty."[51] With regard to Opinion No. 2, Defendant asserts Borison "directly forms conclusions regarding duty, breach and causation" when he opines that because Gaudet and Bardwell failed to hold a JSA meeting, Plaintiff did not appreciate the dangerous position he was in, and if Plaintiff had, he would have known to use his stop-work authority.[52] As to Opinion No. 3, Defendant contends that Borison's position that Bardwell should have used his stop-work authority is "needlessly speculative and directly addresses legal elements of duty, breach and causation."[53] Plaintiff responds that Borison's opinions address Bardwell and Gaudet's failure "to follow safety rules and industry safety standards," Borison's opinions were formulated based upon his review of the underlying evidence, testimony and applicable industry safety standards, and that Borison's testimony will assist the jury in determining the issues at trial.[54]

Federal Rule of Evidence 704 provides that "[a]n opinion is not objectionable just because it embraces an ultimate issue."[55] However, Rule 704 does not open the door to all opinions.

---

[49] *Id.* at 9-10 (emphasis omitted) (quoting ECF No. 24-2 at 7).
[50] *Id.*
[51] *Id.* at 10.
[52] *Id.*
[53] *Id.*
[54] ECF No. 26 at 9-10.
[55] FED. R. EVID. 704; *see also Owen v. Kerr-McGee Corp.*, 698 F.2d 236, 240-41 (5th Cir. 1983) (Rule 704 was enacted to abolish the prior, per se rule against testimony regarding ultimate issues of fact, as the prior rule was found to be "unduly restrictive, difficult of application, and generally served only to deprive the trier of fact of useful information.")

Questions which merely prompt the witness to instruct the jury as to what result to reach are impermissible.[56] Likewise, the rule is not intended "to allow a witness to give *legal* conclusions."[57] Here, the Court finds the statements to which Defendant objects are not impermissible legal conclusions, but rather are Borison's opinions based upon his assessment of the underlying facts and applicable safety standards and are therefore within the domain of expert testimony.[58] In sum, the Court finds Borison's opinions pass *Daubert* scrutiny for purposes of the present motion. However, the parties should be mindful that the Court will not allow Borison to testify regarding any impermissible legal conclusions at trial. Accordingly, defense counsel should re-urge its objection at trial if it appears that a question will lead to a response involving impermissible legal opinion testimony.

## IV.
### CONCLUSION

For the reasons set forth above, the Motion to Exclude the Expert Opinion of Plaintiff's Root Cause Analysis Expert, Robert Borison, filed by Defendant McDermott, Inc. [ECF No. 24] is GRANTED IN PART and DENIED IN PART. The motion is granted to the extent it seeks to exclude Borison's testimony that it was unclear whether Plaintiff's stop-work request would have been heeded. The motion is denied in all other respects.

THUS DONE in Chambers on this 17th day of December, 2021.

_____
ROBERT R. SUMMERHAYS
UNITED STATES DISTRICT JUDGE

---

[56] *Owen*, *supra*.
[57] *Id.*
[58] *Id.* (noting the question, "Did T have capacity to make a will?" is an impermissible question, whereas "Did T have sufficient mental capacity to know the nature and extent of his property and the natural objects of his bounty and to formulate a rational scheme of distribution?" is a permissible question).